695 So.2d 521 (1997)
Rebecca Boyer DAGLEY
v.
Robert Daniel DAGLEY.
No. 96-CA-1796.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
E. Martin Fontaine, E. Gordon Schaefer, Jr., Metairie, for plaintiff/appellee.
Brian E. Sevin, Sr., Brian E. Sevin & Associates, Metairie, for defendant/appellant.
Before SCHOTT, C.J., and CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This is an appeal by the defendant, Robert Daniel Dagley, from a judgment awarding the plaintiff, Rebecca Boyer Dagley, alimony pendente lite in the amount of $1,672.50 per month. For the foregoing reasons, we affirm.
The defendant claims that the trial court erroneously considered purported loans to him from two Subchapter S corporations formed by his father and of which the defendant was a fifty percent shareholder along with his sister, and erroneously considered income from those corporations reflected on the couple's joint income tax returns.
The parties were married on April 24, 1993. The plaintiff filed a petition for divorce on November 7, 1995. The evidence shows the parties had a very comfortable lifestyle. During the marriage they lived in a four bedroom, two-and-a-half bath residence in the Bocage subdivision in New Orleans which the defendant and his sister *522 purchased April 1, 1993, from their father, Bobbie Dagley, for $21,000.00. The parties had use of a recreational vehicle-camper owned by one of his father's companies. They also kept a motor boat at their home, the ownership of which was never determined at trial. The plaintiff testified that during the marriage she "bought what [she] wanted." She stated: "Whenever I needed anything I went and bought it. Whenever I wanted anything I got it." She said the couple took five vacation trips a year during the marriage to places like Destin, Florida, Mobile, Houston, and Detroit, and would occasionally spend weekends in downtown New Orleans hotels. The couple had a credit card given to the defendant by his father which they used. The defendant was asked for a dollar value of the "extras" he receives from the companies formed by his father and he replied: "It's considerable, my guestimate [sic] would be, I don't know." On the other hand, the couple had to take out a personal loan to cover their own credit card debts, which loan was being paid off at the rate of $296.63 per month. The picture painted was of a couple who, as the defendant put it, "live[d] nicely," but seemingly very close to beyond their means.
The couple's joint federal income tax returns for 1993 and 1994 showed a total income of $59,237.00 in 1993 and $78,297.00 in 1994. The defendant worked for one of his father's companies, Dredging Supply Co., Inc., and in 1993 earned only $18,550.00 wages and salary. The plaintiff earned $8,361.00 in wages and salary that year. The bulk of the couple's income that year, $30,229.00, came from Subchapter S corporation income from two corporations, Lynndan Inc. and Deep South Dredging. These Subchapter S corporations were formed for estate planning purposes by Bobbie Dagley, the defendant's father, and the defendant and his sister each owned fifty percent of the shares of stock in the companies. In 1994, the couple's wages and salaries amounted to $31,771.00, $26,900.00 from the defendant's job at Dredging Supply Company, Inc., the rest, $4,871.00, from the plaintiff. The couple listed $20,056.00 in Subchapter S interest income and $21,470.00 in Subchapter S corporation income from the two previously mentioned corporations.
Francis Bourque Jr., an accountant, testified that he set up Deep South Dredging and Lynndan, Inc. as estate planning devices for the defendant's father, Bobbie Dagley. Bourque testified that a Subchapter S corporation's net income is proportionately divided among the shareholders and the shareholders themselves pay the income taxes on the corporation's income. However, he testified that the income of the corporation "has no bearing on the amount of cash that's been distributed to the shareholder for the year." In other words, just because the defendant reported income from the Subchapter S corporations on his federal income tax return, he did not necessarily receive that money. In fact, when Bourque was asked whether the individuals who were shareholders in the corporations, the defendant and his sister, received cash, Bourque replied "No." He also stated that the companies loaned the defendant and his sister money to pay their income taxes. Bourque testified that in 1994, "advances" or loans from the corporations were made to the defendant in the amount of $10,464.39. In 1995, through October 31, 1995, the defendant received "advances" totalling $5,500.00. Bourque testified the cumulative amount of such "advances" made to the defendant as of October 31, 1995 was $67,485.50 (most advanced prior to the marriage). The "advances" were classified as loans on the corporations books. The defendant had not repaid any of these loans and there was no evidence of any repayment schedule. Asked whether there is any discretion when the loans might be repaid, Bourque stated: "Discretion is at the option of the corporation."
La. C.C. art. 111 provides for alimony pendente lite and states:
If the spouse has not a sufficient income for maintenance pending suit for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
A spouse demonstrates a need for alimony pendente lite if she demonstrates *523 that she lacks sufficient income to maintain the style or standard of living that she enjoyed while residing with other spouse during the marriage. Hollowell v. Hollowell, 437 So.2d 908 (La.App. 2d Cir.1983). Once a spouse establishes that she has insufficient income for maintenance, the trial court may award a sum for that spouse's support proportioned to the needs of the claimant spouse and the means of the other spouse. La. C.C. art. 111. The burden is on the claimant spouse to establish the insufficiency of her income in proportion to the means of the other spouse. Terjersen v. Terjersen, 420 So.2d 704 (La.App. 4th Cir.1982). The determination of the means of one spouse to satisfy the alimony pendente lite obligation is based on income but also on any resource from which the wants of life may be supplied, and the entire financial condition of that spouse must be examined. Whatley v. Whatley, 430 So.2d 129 (La.App. 2d Cir.1983). A trial court is vested with wide discretion in determining the amount of alimony of pendente lite and appellate courts will not disturb such awards absent manifest error. Lamb v. Lamb, 427 So.2d 899 (La.App. 3d Cir.1983).
The trial court determined that the plaintiff was entitled to alimony pendente lite in the amount of $1,672.50; she had listed her monthly expenses as $3,486.00. The trial court deducted various items from the plaintiff's total monthly expenses, including the plaintiff's monthly income at the time, $838.50. In its reasons for judgment the trial court cited the loans and extras the defendant received from the two companies his father formed. She also cited the total income reported on the 1994 joint income tax return, $78,297.00, the bulk of which was from Subchapter S interest and income, and noted that only $4,870.00 was attributable to earnings of the plaintiff.
In Martin v. Martin, 625 So.2d 544 (La. App. 5th Cir.1993), writ denied, 93-2679 (La.1/7/94), 631 So.2d 447, the court considered the issue of income from Subchapter S corporations being used to calculate an award of alimony pendente lite. In Martin, as in the instant case, the husband was a fifty percent owner of a Subchapter S corporation which reported profit. Also, as in the instant case, there was no evidence that the husband received any cash distribution from the corporation. Nevertheless, the court found no abuse of discretion in the trial court's consideration of the Subchapter S corporation profit in making the award of alimony pendente lite. As in Martin, we are unable to find an abuse of discretion in the trial court's consideration of the defendant's Subchapter S income and interest in making the award of alimony pendente lite. As for the loans, the defendant and his sister own and control the Subchapter S corporations and the defendant has taken no steps toward repayment of these loans. It is purely up to the discretion of the defendant and his sister (who also has taken advances or loans from the corporations) to call in these loans. These are not truly loans and we find no abuse of discretion in the trial court's consideration of the amount of the loans in making its award of alimony pendente lite.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
SCHOTT, C.J., concurs.
SCHOTT, Chief Judge, concurring:
Appellant's sole assignment of error is that the trial court abused its discretion in the amount of alimony pendente lite by crediting him with more income than he was actually receiving.
The trial judge gave extensive reasons for judgment. On the subject of appellant's means she alluded to his access to company credit cards and other perques. She discussed the testimony of the CPA concerning the Subchapter S corporations and the loans. She found that appellant has partial ownership in two corporations, he has the ability to take advances from and write checks on accounts of the companies, none of which have been repaid, and he has received considerable sums from his companies to cover his expenses. She noted that the couple reported $78,297.00 on their 1994 federal income tax return of which only $4,871.00 was earned by appellee. The record supports these findings.
*524 She found that appellee's needs came to $2,172.00 per month which appellant does not dispute. Considering that appellant reported on his federal income tax return that he made over $6,000.00 per month and that he was receiving a considerable amount more in unreportable, non taxable benefits from his companies, I cannot conclude that the award of $1,672.00 per month for alimony pendente lite was an abuse of the trial court's discretion.