764 So.2d 1157 (2000)
Wall V. McKNEELY
v.
Margaret Thompson McKNEELY.
No. 98 CA 2472.
Court of Appeal of Louisiana, First Circuit.
June 14, 2000.
Rehearing Denied August 15, 2000.
*1159 Scott H. Sledge, Hammond, Joseph H. Simpson, Amite, Counsel for PlaintiffAppelleeWall V. McKneely.
Lila Tritico Hogan, Hammond, Counsel for DefendantAppellantMargaret Thompson McKneely.
Before: GONZALES, WHIPPLE, PARRO, FITZSIMMONS, and WEIMER, JJ.
FITZSIMMONS, J.
Appellant, Margaret Thompson McKneely, appeals the trial court's judgment of child support, allocation of community property, and alimony. In her assignments of error, she contests:
1) The trial court's determination that undistributed income from a separately owned subchapter S corporation was the separate property of Wall McKneely, her exhusband.
2) The trial court's calculation of Wall McKneely's income in the child support determination, specifically:
a) the calculation of interest income on an anticipated diminution of investment principal, rather than the actual amount at the time of trial;
b) the use of lower interest and capital gains than Wall McKneely actually received on his investment portfolio.
3) The trial court's denial of Margaret McKneely's claim for permanent alimony, i.e.:
a) Failure to use the net income of Margaret McKneely;
b) Consideration of child support as income to Margaret McKneely;
c) Failure to consider the previous and current lifestyle of the parties; and
d) Failure to consider Margaret McKneely's uncontroverted expenses as necessities.
4) The trial court's ruling that income which was physically distributed from Wall McKneely's separate S corporation, but returned to the S corporation at a later time, was his separate property.
5) The trial court's subtraction of expenses, which were not raised at trial, from Margaret McKneely's reimbursement claim for use of community rental income to satisfy Wall McKneely's separate obligation.
*1160 6) The trial court's failure to recognize Margaret McKneely's reimbursement claim for use of community funds for the improvement of Wall McKneely's separate property.
7) The trial court's recognition of Wall McKneely's reimbursement claim for paying post-community expenses on community rental houses when he failed to manage them in a prudent manner or collect rent to pay these expenses.

UNDISTRIBUTED INCOME OF A SUBCHAPTER S CORPORATION
Two brothers were equal shareholders in a subchapter S corporation. The history of the corporation is marred by mutual distrust. It is further complicated by a divorce.
The issue of concern in this assignment of error is whether the undistributed income held in a separate property subchapter S corporation constitutes a civil fruit of the corporation pursuant to La. C.C. art. 2339. Factually, that income has been taxed to the individual stockholder. It is initially observed that the structure of a subchapter S corporation, a hybrid of the partnership and corporation entities, complicates a legal analysis of the nature of the undistributed income. In a subchapter S corporation, annual distribution of all profits for purposes of taxation is mandated; however, rather than take physical individual receipt of the income, the shareholders can place all, or a portion, in a "drawing account" or an "accumulated adjustments account." See Directional Wireline Services, Inc. v. Tillett, 552 So.2d 1201, 1203 and n. 7(La.App. 1st Cir.1989); Dagley v. Dagley, 96-1796, p. 3 (La.App. 4th Cir.5/21/97), 695 So.2d 521, 522.
The trial court determined that the undistributed profits were not fruits; therefore, they were not community property. In reasons for judgment, the court enunciated that the undistributed funds of each of the shareholders and the corporation were maintained in a single corporate account. Moreover, the accumulated adjustments account, which reflected the undistributed sums that had been taxed to the individual shareholders, was not a physically separate account, but an accounting established on paper for bookkeeping purposes.
Support of the characterization of the income of the subchapter S corporation as a fruit of the separate property rests in the fact that, although the income had not been distributed to the individuals, it had been taxed to each of them[1]. However, the definition of fruits is "things that are produced by or derived from another thing without diminution of its substance." La. C.C. art. 551. The civil code article furthermore provides that civil fruits are "revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions." (Emphasis added) Id.;[2]
Notwithstanding taxation rules promulgated expressly for the purpose of a subchapter S corporation, tax regulations are not the determinant in the characterization of income with respect to Louisiana property laws. Although Wall McKneely might have possessed the right to transfer the fruits to an individual account, he had not in fact done so. Title to those fruits remained in the subchapter S corporation. Until those funds were actually disbursed, or distributed, they were not the property, or a fruit, of Mr. McKneely individually. See In re Howard Marshall Charitable Remainder Annuity Trust, 97-1718, p. 11 (La.3/4/98), 709 So.2d 662, 667; Ogden v. Ogden, 331 So.2d 592, 595-596 (La.App. 1st Cir.), writ denied, 337 So.2d 523 (La. *1161 1976).[3] Thus, the ultimate determination by the trial court is correct.

REMOVAL OF $110,000.00 FROM THE SUBCHAPTER S ACCOUNT
It is undisputed that Mr. McKneely withdrew an aggregate amount of $110,000.00 from the subchapter S account between April 4, 1996 and April 9, 1996. The withdrawals were transacted as follows: $50,000.00 was withdrawn from the funeral home savings account in the form of a cashier's check payable to McKneely Funeral Home of Amite, Inc.; $50,000.00 was taken out of the funeral home business checking account by check made payable to Wall McKneely; and, $10,000.00 was removed from the business checking account of the funeral home via a check cashed by Mr. McKneely personally.
The controversy over the characterization of the withdrawals as community income focuses on the fact that the monies were held in the safe of a certified public accountant. Following the termination of the community, Mr. McKneely subsequently returned an equal sum of $110,000.00 to the subchapter S corporate account. The trial court made the factual finding that the intent associated with the removal of funds from the subchapter S corporate account was not done "for the ordinary purposes one would associate with such an action ... but, on the contrary, as a protective measure during a period of dispute between the brothers as to the business." The trial court ruled that the $110,000.00 did not become community property, of which Mrs. McKneely would be entitled to one-half.
The legal error in the trial court's assessment of the status of the funds rests with its consideration of the intent of the party, rather than limiting its decision to the documented evidence before the court. The negotiable instruments under review are not subject to any of the defenses that nullify a contract or negotiable instrument, such as duress, lack of legal capacity, or illegality of the transaction. La. R.S. 10:3-305. General contract law dictates that the courts are bound to give legal effect to all contracts, according to the true intent of the parties, and the intent is to be determined by the words in the contract when they are clear and explicit. Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826, 832 (La.1989). Moreover, the "Commercial LawsNegotiable Instruments" chapter of the Louisiana Revised Statutes, interprets properly negotiated draft instruments according to the intent expressed therein. See La. R.S. 10:3-101, et sequitur.
Looking to the $110,000.00 sum withdrawn by Mr. McKneely, $50,000.00 of the subject proceeds were physically withdrawn from the account of the funeral company and placed in a separate personal account prior to the date of the termination of the community regime. Irrespective of ulterior motives for the disbursement, title to those funds changed from the corporate entity to Mr. McKneely's *1162 individual account. A distribution of proceeds clearly occurred.
The sum of $10,000.00, also distributed to Mr. McKneely is, however, distinguishable. The transfer notably occurred on the same day that the petition for divorce was filed. Once the divorce was granted, the community terminated retroactive to the date of the filing of the petition. La. C.C. art. 159. Therefore, the $10,000.00 check would have technically been received after the termination of the community, and it should be classified as separate property.
Finally, $50,000.00 of the controverted sum remained in the name of McKneely Funeral Home of Amite, Inc. It was not distributed to Mr. McKneely personally; therefore, it should not be included as community property.
Based on the foregoing analysis, this court reverses the trial court's determination relative to $50,000.00 of the controverted sum, which constituted the amount transferred by Mr. McKneely from the corporate account to an independent personal account, prior to the community regime termination. That sum had been disbursed; it was community property subject to partition.

CHILD SUPPORT
It is asserted that the trial court erred in calculating interest income to Mr. McKneely by applying Mr. McKneely's anticipated earnings, as opposed to his actual earnings. We agree with this postulation. Although child support should be based on the "circumstances" of the paying parent, not just his income, the adjusted gross income of a parent, as defined in La. R.S. 9:315, does not encompass anticipated future expenses that are not incurred as of the time of the assessment of the income. See and compare Stockstill v. Stockstill, 546 So.2d 491, 493-494 (La.App. 4th Cir.), writ denied, 548 So.2d 1230 (La.1989). Income for the purpose of establishing child support is dependent upon gross income, or the parties' financial condition, at the time of the determination. An accountant's projection of tax consequences is not substantive proof of one's financial condition; whereas, actual tax returns are. Roberts v. Roberts, 95-1626, p. 7 (La.App. 4th Cir.6/5/96), 677 So.2d 1042, 1047. If such a change in his gross income materializes, Mr. McKneely's remedy would properly be to seek a reduction in the child support award based on a change in circumstances. La. R.S. 9:311. Accordingly, we revise the calculations to replace the sum of $700,000.00 with the monetary figure of $950,000.00, the amount Mr. McKneely received from the sale of his share of the corporation.
The trial court accepted the expert testimony presented by Dr. Yu Hsing with respect to the expected rate of return on the sums received for the sale of Mr. McKneely's interest in the funeral home. It is the trier of fact's responsibility to assess the credibility of expert witness testimony where there is a discrepancy. Theriot v. Lasseigne, 93-2661, p. 9 (La.7/5/94), 640 So.2d 1305, 1313. A court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Finding no manifest error in the trial court's credibility determination, we utilize the rate of interest accepted by the court. The capital figure of $950,000.00 multiplied by 7.18% equals $68,210.00 per year, or $5,684.17 per month. Combining this figure with Mr. McKneely's earning capacity of $2,383.33 per month results in a monthly income of $8,067.50. Adding Mrs. McKneely's monthly income of $1,083.00 brings the combined income to $9,150.50 per month. The schedule for child support for three children at that income is fixed at $1,974.00 per month. Mr. McKneely's income constitutes 88% of the combined income; therefore, he should have been assessed with child support payments in the sum of $1,737.12 per month. The amount of the judgment is revised accordingly.

*1163 PERMANENT ALIMONY

It is well-settled that the party seeking alimony has the burden of proving necessitous circumstances or insufficient means for maintenance. Alford v. Alford, 610 So.2d 923, 925 (La.App. 1st Cir.1992). Under the provisions of the applicable version of La. C.C. art. 112, it is within the sound discretion of the trial court to allow and fix the amount of alimony as is just and proper under the facts of the case. Wascom v. Wascom, 97-0547, p. 9 (La. App. 1st Cir.6/29/98), 713 So.2d 1271, 1275-1276, writ denied, 98-2028 (La.11/6/98), 728 So.2d 391. The trial court gauged Mrs. McKneely's circumstances by considering her assets and income, as well as her needs. We cannot say that the court abused its discretion in weighing the evidence, applying the law, and determining that Mrs. McKneely's means satisfied her needs for maintenance under the demonstrated circumstances. See Wascom, 97-0547, pp. 9-10, 713 So.2d at 1276. It should not be forgotten that "permanent" alimony centers on the basic needs of the spouse seeking support: "necessitous circumstances" was properly recognized by the trial court as the correct standard.

REIMBURSEMENT CLAIMS
This court finds no error in the trial court's subtraction of expenses from Mr. McKneely's separate income to ascertain the net rental income, of which Mrs. McKneely would be entitled to one-half. Additionally, we do not find that the trial court's failure to attribute any of the funds used to enhance the funeral home in Kentwood as community property to be erroneous. Mrs. McKneely did not present evidence substantiating that the improvements to the Kentwood funeral home were made with community funds, as opposed to corporate funds. These assignments lack merit.

MISMANAGEMENT OF FUNDS
Finally, Mrs. McKneely attacks the trial court's acceptance of Mr. McKneely's claim for reimbursement of expenses presented in conjunction with his management of two rental houses, which were former community assets. It is asserted that Mr. McKneely failed to operate as a prudent administrator of the community assets.
Louisiana Civil Code article 2369.3 provides in the following pertinent part:
A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime.
Rental income clearly decreased in the year and five months subsequent to the termination of the community; however, the record reveals that the rental figures had already commenced a downslide months prior to the termination. There has, therefore, been no demonstration that the rental income received on the rental property was inconsistent with the general amount of income generated prior to the termination of the community. The trial court did not err in its conclusion that there was no mismanagement of the property, nor in its finding that the post-community expenses were subject to reimbursement.

CONCLUSION
The judgment of the trial court is reversed in part, and amended in part, as follows: 1) to include as community property the sum of $50,000.00, which was withdrawn from the funeral home account by Wall McKneely (Mrs. McKneely's share would be $25,000.00); and 2) to amend the award of child support to $1,737.12 per month. In all other respects, the trial court judgment is affirmed. Costs affiliated with this appeal are assessed equally to the parties.
REVERSED IN PART; AFFIRMED IN PART; AMENDED IN PART; AND, AS AMENDED, RENDERED.
*1164 WHIPPLE, J., concurs in part and dissents in part for reasons assigned.
PARRO, J., concurs.
WHIPPLE, J., concurring in part and dissenting in part.
Although I agree with the majority on the other issues, I respectfully dissent from the majority's classification as community only $50,000.00 of the $110,000.00 withdrawn from the account, and for which a tax liability to the community was incurred. Once these funds were made available, and dominion was exercised over them by plaintiff, they ceased to belong to the corporation and, in my view, should have been characterized as community. Thus, I respectfully dissent in part.
NOTES
[1] We note that the trial court properly calculated a reimbursement to Mrs. McKneely for her share of community funds used to pay taxes on the corporate income.
[2] The only definition of the kinds of fruits is located in Book II, Title III, chapter 2, section 2 of the Louisiana Civil Code, which addresses the rights of the usufructuary.
[3] The cases cited on behalf of Mrs. McKneely involve the distinguishable alimony pendente lite, as opposed to the classification of the undistributed income as a fruit. A determination of alimony pendente lite is based on income, but also on any resource from which the wants of life may be supplied, and the entire financial condition of that spouse must be examined. Dagley v. Dagley, 96-1796, p. 4 (La.App. 4th Cir.5/21/97), 695 So.2d 521, 523.

Additionally, Guilott v. Guilott, 361 So.2d 1271 (La.App. 3rd Cir.), writ denied, 363 So.2d 68 (La.1978), is distinguishable. The Guilott case involved a partnership in commendam, rather than a subchapter S corporation. Each partner's share of earnings had been transferred from the partnership to the individual partners' accounts. In the case before this court, the money was placed in an "accumulated adjustments account" over which the corporation had control until actual disbursement of the funds. Testimony established that the corporation used funds from the accumulated adjustments account for business purposes, thus differentiating it from Gullott[Guilott]. To the extent that Gullott[Guilott] might be deemed to conflict with our holding, we decline to follow the third circuit.