WICKER, J.
*1049 Appellant, Mia Randle, seeks review of the trial court's December 18, 2017 judgment granting Sylvester Randle interim spousal support in the amount of $1,500.00 per month and child support in the amount of $1,793.31 per month with Ms. Randle owing to Mr. Randle a retroactive amount of $5,750.00 in interim spousal support and $8,966.55 in child support. For the following reasons, we affirm the trial court's judgment.
PROCEDURAL HISTORY
Mr. Randle and Ms. Randle were married on January 20, 2006, in Hinds County, Mississippi. They moved to Louisiana in 2013. From their union, three children were born, all of whom are currently under the age of majority. On July 19, 2017, Ms. Randle filed a Petition for Divorce Pursuant to LSA-C.C. Art. 102, Rule for Custody, Request for Use of Immoveable and Moveable Property and Request for Expedited Hearing in the Twenty-Ninth Judicial District Court. On July 31, 2017, Mr. Randle filed a Motion on Incidental Matters which included a request for child support and interim periodic spousal support. On August 4, 2017, the trial court entered an Interim Consent Judgment addressing the issues of health insurance, occupancy of the family home, use of the family computer, distribution of the children's clothing, vehicle maintenance, child custody, and injunctions. On December 12, 2017, the trial court entered a subsequent Consent Judgment signed by Mr. and Ms. Randle;[1] thus, the only matters addressed by the trial court on December 12, 2017, were Mr. Randle's requests for child support and interim spousal support.
On December 18, 2017, the trial court, in a Judgment Regarding Interim Spousal Support and Child Support , ordered Ms. Randle to pay Mr. Randle $1,150.00 per month in interim spousal support "retroactive to July 27, 2017," the date Ms. Randle filed her petition for divorce. The trial court ordered Ms. Randle to pay the retroactive amount of $6,900.00 at the rate of $1,500.00 per month. Ms. Randle was also *1050 ordered to pay Mr. Randle $1,793.31 per month in child support, "retroactive to July 27, 2017," with a retroactive amount of $10,759.86 paid at the rate of $1,500.00 per month.
On March 28, 2018, the trial court issued Written Reasons for Judgment and Amendment to Correct Calculation of Error[2] whereby the court corrected a calculation error in assigning the retroactive amount Ms. Randle was to pay Mr. Randle in both child support and interim spousal support.[3] It is from the December 18, 2017 judgment that Ms. Randle filed her timely appeal.
DISCUSSION
Ms. Randle asserts the following assignments of error regarding the trial court's December 18, 2017 judgment: the trial court abused its discretion and committed manifest legal error in finding that Mr. Randle met his burden to prove that he is entitled to interim spousal support and in determining that Ms. Randle has the ability to pay Mr. Randle interim spousal support; the trial court committed manifest legal error in calculating Ms. Randle's child support obligation on a 57% - 43% time basis, rather than a 50% - 50% time basis; and the trial court failed to give Ms. Randle credit for childcare expenses that were paid solely by her from the time Mr. Randle requested child support until the time the child support obligation was set by Judgment.
Need of Interim Spousal Support
In Ms. Randle's first assignment of error, she avers the trial court abused its discretion and committed manifest legal error in finding that Mr. Randle needs interim spousal support. In a divorce proceeding, a court may award a party interim periodic spousal support based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during marriage. La. C.C. arts. 111 and 113. Interim periodic spousal support is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. St. Pierre v. St. Pierre , 09-1124 (La. App. 5 Cir. 5/25/10), 42 So.3d 426, 428-429 ; Dufresne v. Dufresne , 08-215 (La. App. 5 Cir. 9/16/08), 992 So.2d 579, 588, writ denied , 08- 2843 (La. 12/17/08), 996 So.2d 1123. It is awarded retroactive to the date of the petition for spousal support. La. R.S. 9:310(A).
The needs of the claimant spouse have been defined as "the total amount sufficient to maintain ... a standard of living comparable to that enjoyed by [the claimant spouse] prior to the separation, limited only by the [other spouse's] ability to pay," and the claimant spouse has the burden of proving his or her need. Hitchens v. Hitchens, 38-339, p.2 (La. App. 2 Cir. 5/12/04), 873 So.2d 882, 884 ; Jones v. Jones , 38-790, p.15 (La. App. 2 Cir. 6/25/04), 877 So.2d 1061, 1072. An award of *1051 support also requires that expenses claimed be reasonable. Vassallo v. Vassallo , 540 So.2d 1300 (La. App. 5 Cir. 1989).
The trial court is given much discretion in determining awards of spousal support and its determinations will not be disturbed absent a clear abuse of discretion. Dufresne , supra . The right to claim interim periodic support is based on the statutorily imposed duty of spouses to support each other during marriage and provide for the spouse who does not have sufficient income for his or her maintenance during separation. La. C.C. art. 98 ; Hall v. Hall , 08-706 (La. App. 5 Cir. 2/10/09), 4 So.3d 254, 257, writ denied, 09-0812 (La. 5/29/09), 9 So.3d 166 ; McAlpine v. McAlpine , 94-1594 (La. 9/05/96), 679 So.2d 85, 90. The right of spousal support is further emphasized in the Louisiana Civil Code which imposes a mutual duty on married persons to provide fidelity, support, and assistance to each other. La. C.C. art. 98.
In her brief, Ms. Randle asserts that Mr. Randle failed to demonstrate his need for spousal support in that his listed expenses on the Income and Expense Statement were not exclusively his personal expenses. Specifically, she avers that the expenses alleged by Mr. Randle include those incurred by him and the parties' minor children, which have also been included in the child support calculation. Thus, Ms. Randle contends that Mr. Randle had not been paying the expenses he included on the Income and Expense Statement because Ms. Randle had been paying those expenses as a form of child support, pursuant to the parties' mutual Consent Judgment . Therefore, Ms. Randle suggests that Mr. Randle be credited for only one-half the expenses he pays on rent, electric, water, cable television, phone, internet, and maintenance since she maintains the children "approximately one-half of the time."
In Mr. Randle's brief, he avers that his stated expenses would be incurred regardless of whether the children lived in his household and further argues that he supplemented and/or modified his Income and Expense Statement through his testimony at trial. Specifically, Mr. Randle avers that he withheld the minimum amount of federal taxes to increase his net pay and that if the correct amount of federal taxes were withheld from his paycheck, he would be unable to "make ends meet;" he pays the bare minimum of $100.00 per month on his $1,700.00 credit card debt; he experienced an increase in gasoline expenses due to issues with his transmission which cost $1,800.00 to fix; and the expenses categorized as "Children's Clothing & Shoes" only included the children's uniforms and shoes, not their regular clothing. In testifying to the adjustments in his Income and Expense Statement , Mr. Randle argues that he experiences a monthly deficit beyond what was written on the Income and Expense Statement and is in need of interim spousal support.
In examining the record, we find that the trial court did not abuse its discretion nor did it commit manifest legal error in awarding Mr. Randle interim spousal support. At trial, the parties submitted proof of employment, income and expense affidavits, paystubs, and child support obligation worksheets. In doing so, the court determined that Ms. Randle's monthly gross income was $17,837.62 and Mr. Randle's monthly gross income was $4,398.00. Further, the court found insufficient evidence of underemployment by Mr. Randle. According to testimony provided at trial, Mr. Randle is a State employee who is only *1052 contracted to work 1,000 hours.[4]
While Ms. Randle appears to assert that Mr. Randle's expenses are inflated by the inclusion of expenses incurred by the parties' minor children, she failed to assert or elicit which portion of the expenses he alleged, other than food, were covered by the child support obligations she was required to pay. Further, she failed to provide evidence refuting the supplemental expenses alleged by Mr. Randle during trial. In failing to submit substantial evidence refuting Mr. Randle's claim of need, we give deference to the trial court. In light of the record before us, we affirm the trial court's awarding of interim spousal support to Mr. Randle.
Ability to Pay Interim Spousal Support
In her second assignment of error, Ms. Randle asserts that the trial court abused its discretion and committed manifest legal error in determining that she has the ability to pay Mr. Randle interim spousal support. Once a claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. St. Pierre v. St. Pierre , supra . In assessing a spouse's ability to pay, the court must consider his or her means. Id. Means include "any resource from which the wants of life may be supplied," requiring an assessment of the entire financial condition of the payor spouse. Dagley v. Dagley , 96-1796, p. 4 (La. App. 4 Cir. 5/21/97), 695 So.2d 521, 523. The trial court has much discretion in determining awards of spousal support and its determinations will not be disturbed absent a clear abuse of discretion. Id. An abuse of discretion will not be found if the record supports the trial court's conclusions about the means of the payor spouse and his or her ability to pay. Short v. Short , 11-1084 (La. App. 5 Cir. 05/22/12), 96 So.3d 552, 556 (citing Lambert v. Lambert , 06-2399 (La. App. 1 Cir. 03/23/07), 960 So.2d 921, 928 ).
From January 2017 to November 2017, Ms. Randle grossed $241,101.21. Despite a gross income of $17,837.62 dollars per month (as calculated by the court), Ms. Randle stated that after payroll deductions of $10,053.95, her voluntary contributions to her 401K in the amount of $1,484.58, and child support payments to her husband, she will suffer a monthly deficit. She further asserts that such deficit will create an "economic dislocation of the parties [which] does not maintain the economic status quo."
We recognize that while Ms. Randle provided testimony regarding several expenses mentioned on her submitted Income and Expense Affidavit , she failed to provide the trial court with proof that she actually incurred said expenses. For example, when Ms. Randle was asked about the $12,000.00 expense she categorized as "home maintenance," she introduced no invoices or other form of evidence regarding these repairs. Although Ms. Randle provided testimony regarding several areas of the home in need of repair, she failed to submit evidence supporting her claim. Absent evidence substantiating Ms. Randle's claim of her inability to pay periodic interim spousal support, we find that the trial court did not err in finding that *1053 Ms. Randle had the means to pay Mr. Randle interim spousal support. Despite Ms. Randle's assertions to the contrary, the record supports the trial court's conclusions that Mr. Randle was in need of support and Ms. Randle had the means and the ability to pay spousal support in the amounts awarded by the trial court.
57% v. 43% Child Support Obligation
In her third assignment of error, Ms. Randle asserts the trial court erred in its calculation of custody 57% in favor of Mr. Randle and 43% in favor of Ms. Randle. In the Interim Consent Judgment rendered August 4, 2017, the parties agreed that Mr. Randle would receive physical custody of the children every Sunday at 10:00 A.M. until Thursday, and Ms. Randle would receive physical custody of the children from Thursday until Sunday at 10:00 A.M. However, on December 12, 2017, via a subsequent Consent Judgment , Mr. Randle received physical custody of the minor children every Sunday at 12:00 P.M. through the end of school/summer camp on Thursday, and one weekend per month Friday at 6:00 P.M. to Sunday at 12:00 P.M. Ms. Randle received physical custody of the children every Thursday from the end of school/summer camp through Sunday at 12:00 P.M. and two week nights per month to be agreed upon by the parties. Mr. and Ms. Randle were further ordered to follow the holiday custody schedule, ensure they pick up the children for custody exchanges, and comply with co-parenting guidelines.
In her brief, Ms. Randle relies on Westcott v. Westcott , 04-2298 (La. App. 1 Cir. 11/4/05), 927 So.2d 377, in which a trial court's decision to deviate from the statutory child support guidelines was upheld by the First Circuit when the trial court provided oral reasons for its deviation. In its reasoning, the trial court considered the number of meals provided by each parent, the time spent helping with homework, and testimony of a court-appointed hearing officer with a financial background and a social worker, both of whom spent many hours with the parties. Id. at 378.
Westcott differs from the present case in that no hearing officer or social worker evaluated the quality of time spent with the minor children by Mr. and Ms. Randle. Instead, the trial court was presented with the Consent Judgment , which afforded Mr. Randle four nights of physical custody of the children, two nights a month in which the parties switched custody, and the ability to bring the children to their sporting events,[5] as well as testimony regarding the times the parties worked outside of the agreement to the benefit of the other. Given the testimony and evidence submitted regarding the time allotted each parent with the minor children and the physical time they spent with each child, we find that the trial court did not err in its calculation of child support based upon a custody arrangement 57% in favor of Mr. Randle and 43% in favor of Ms. Randle.
Credit for Childcare Expenses
In her final assignment of error, Ms. Randle argues that the trial court committed manifest error in failing to give Ms. Randle credit for childcare expenses that were paid solely by her, from the time Mr. Randle requested child support until the time the child support obligation was set by Judgment. Specifically, Ms. Randle avers she is entitled to a 20% credit for the child care expenses she paid during Thanksgiving of 2017 totaling $300.00 dollars *1054 and for the before and after care she paid for the minor children from August 2017 to November 2017 totaling $525 dollars. Once again, Ms. Randle failed to introduce evidence of her payments of child care expenses for the aforementioned periods.
An appellate court must render its judgment based upon the record on appeal. La. C.C.P. art. 2164. A court of appeal is a court of record, which must limit its review to evidence in the record before it. See Black v. Anderson , 06-891 (La. App. 5 Cir. 3/13/07), 956 So.2d 20 ; Martin v. Martin , 14-749 (La. App. 5 Cir. 2/25/15), 168 So.3d 829 ; Lowentritt v. Lowentritt , 11-703 (La. App. 5 Cir. 3/13/12), 90 So.3d 1081.
Based only on the evidence that is in the record, we cannot determine if Ms. Randle actually made childcare payments. Thus, we do not have a sufficient basis to find that the trial court committed manifest error in not crediting Ms. Randle for childcare expenses.[6]
CONCLUSION
For the aforementioned reasons, we affirm the trial court's judgment awarding Mr. Randle interim spousal support and child support retroactive to the date of filing the Petition for Divorce.
AFFIRMED

The subsequent Consent Judgment awarded the parties joint and shared custody, with Mr. Randle being the primary domiciliary parent. Mr. Randle was granted physical custody of the children every Sunday at 12:00 p.m. through the end of school/summer camp on Thursday, and one weekend per month from Friday at 6:00 p.m. to Sunday at 12:00 p.m. Ms. Randle was given physical custody of the children every Thursday from the end of school/summer camp through Sunday at 12:00 p.m. The judgment also addressed the custody of the children during holidays and required that the parties comply with co-parenting guidelines. The Consent Judgment required the parent receiving custody to pick up the children for the custody exchange and further afforded Mr. Randle the ability to take the children to their extracurricular activities regardless of the custody schedule. Finally, the Consent Judgment required Ms. Randle to maintain the children's health and dental insurance, awarded Ms. Randle exclusive use of the 2015 Infinity QX80 (pending partition), and awarded Ms. Randle exclusive use of the family home located in Destrehan, Louisiana.

The trial court initially determined the retroactive amount owed by Ms. Randle using a six-month calculation; however, since Ms. Randle was to make payments retroactive to July 2017, and the court order was dated December 2017, only five months had passed; thus, at the time of judgment, Ms. Randle only owed for five, not six months.

We take judicial notice that the lower court references a December 18, 2018 judgment in its Written Reasons for Judgment and Amendment to Correct Calculation Error ; however, at the time of issuing its reasons, this date had not yet occurred. We recognize this as a typographical error in that the trial court references the proper year (December 18, 2017) within the same document hosting its reasons for judgment and the parties, throughout their briefs, demonstrated their understanding of the trial court's intent to reference the December 18, 2017 judgment.

Mr. Randle testified that he began working as a contract employee for the State of Louisiana in April 2017, and ended his part-time employment at the cigar shop in September 2017. According to his testimony, he works an average of 28 hours per week. Mr. Randle also testified that one of his reasons for no longer working at the cigar shop was its interference with the parties' minor children's ability to participate in extracurricular activities. This appears to be a steady theme, in that during various times in the marriage, Mr. Randle became unemployed or changed jobs because his work hours interfered with his ability to care for the minor children while Ms. Randle worked.

Mr. Randle takes the children to their sporting events during periods in which Ms. Randle has been assigned custody of the minor children. We recognize that during this period of time, Ms. Randle does not have custody of at least one of the children, depending on the sport being played and the season in which it is being played.

In his brief, Mr. Randle states that he is willing to pay Ms. Randle the $525.00 if she shows evidence of payment.