JOHN C. CENTANNI, JR.

VERSUS

EVABLANCHE MARY CENTANNI

NO. 21-CA-30

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 762-635, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

October 19, 2021

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

**REVERSED**
**HJL**
**SJW**
**JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy Clerk, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
JOHN C. CENTANNI, JR.
Jennifer C. Carter

COUNSEL FOR DEFENDANT/APPELLEE,
EVABLANCHE MARY CENTANNI
Edith H. Morris
Bernadette R. Lee
Suzanne Ecuyer Bayle
Sheila H. Willis

COUNSEL FOR DEFENDANT/APPELLANT,
CENTANNI, LLC, CENTANNI LIMITED PARTNERSHIP AND CENTRAL
DISPATCH, INC.
Timothy Thriffiley
George I. Pivach, II

**LILJEBERG, J.**

This matter involves an appeal filed by three non-parties, Central Dispatch, Inc., Centanni Limited Partnership and Centanni, LLC ("appellants"), from a judgment requiring them to produce documents in response to subpoenas duces tecum issued to them by appellee, Evablanche Mary Centanni.[1]  Ms. Centanni issued the subpoenas duces tecum as part of an ongoing community property partition proceeding she is litigating with her former spouse, John C. Centanni, Jr. In its October 22, 2020 judgment, the trial court ordered appellants to each produce their state and federal tax returns, Schedule K-1 forms issued to their shareholders/members/partners, and journal entries in their accounting records for payments relating to Mr. Centanni from 2008 to 2016.  In its oral reasons assigned at the evidentiary hearing, the trial court stated that good cause existed to require the production of the requested documents based on Mr. Centanni's status as a shareholder and member of the entities.  Appellants object to the production of nine years of their confidential financial information and tax returns, because they claim Ms. Centanni did not meet her burden of proof to obtain such records from a non-party.  They contend that Mr. Centanni's interests in the appellant entities are his separate property, and Ms. Centanni failed to establish good cause exists to require production of their tax returns and Schedule K-1 forms by showing the unavailability of the information from other sources and by relating the relevancy of the requested documents to the claims in dispute in the community property partition.

We agree that the trial court erred by ordering the blanket production of appellants' tax returns and Schedule K-1 forms without requiring Ms. Centanni to

---

[1] Generally, a judgment resolving a discovery issue between a non-party and party is a final appealable judgment because it resolves all issues existing between them.  *See Gariepy v. Evan Industries, Inc.*, 06-106 (La. App. 5 Cir. 9/25/07), 968 So.2d 753, 754-55.

relate the relevancy of each request to a claim at issue in the proceedings and to demonstrate her inability to obtain necessary information from other sources. Accordingly, we reverse the October 22, 2020 judgment ordering appellants to produce their tax returns and Schedule K-1 forms in response to the subpoenas duces tecum served on them by Ms. Centanni.

## FACTS AND PROCEDURAL BACKGROUND

The underlying litigation involves a contested community property petition between John C. Centanni, Jr. and appellee, Evablanche Mary Centanni. Mr. Centanni, along with his three siblings, wholly own the three appellant entities.[2] On May 20, 2020, Ms. Centanni issued identical subpoenas duces tecum to each appellant and sought the production of the following documents:

1) All K-1's issued by this entity to all shareholders/members from 1989 through 2016;

2) All federal and state tax/information returns filed by this entity from 1989 through 2016;

3) All journal entries in the accounting records of this entity of any and all payments that relate to any and all payments, advances and/or reimbursement of expenses, obligations and/or debts of John C. Centanni, Jr. from 1989 through 2016; and

4) All journal entries in the accounting records of the entity that relate to any payment for which John C. Centanni, Jr. seeks reimbursement from 1989 through 2016.

Ms. Centanni issued these discovery requests in response to Mr. Centanni's addition to his sworn detailed descriptive list, shortly prior to the amendment deadline, to include a reimbursement claim for over $8,000,000 in state and federal taxes allegedly paid by appellant, Central Dispatch, on behalf of the parties during their marriage.[3] Mr. Centanni subsequently reduced the amount of his claim to

---

[2] According to the parties, Mr. Centanni owns a twenty-five percent (25%) minority interest in each of the entities. It is undisputed that Mr. Centanni's interests in Central Dispatch and Centanni Limited Partnership are his separate property. As discussed more fully below, after issuing the subpoenas duces tecum, Ms. Centanni raised new allegations claiming that Mr. Centanni's interest in Centanni, LLC is community property.

[3] According to the parties, Central Dispatch is a Subchapter S corporation, which means its profits and losses are not taxed at the corporate level. Rather, the taxes are paid by the shareholders even if the income is not actually

$5,600,000, after limiting the requested reimbursements to tax payments made by Central Dispatch from 2008 to 2016. Mr. Centanni contends the funds Central Dispatch used to pay the taxes do not qualify as civil fruits and, therefore, are his separate property subject to reimbursement by the community. Ms. Centanni argues, on the other hand, that these payments qualify as distributions of income from Central Dispatch that are civil fruits of the corporation and qualify as community property.[4]

According to the parties, appellants produced the journal entries for payments relating to Mr. Centanni requested in Items 3 and 4, as well as the Schedule K-1 forms issued to Mr. Centanni by each of the appellants. These items are not at issue on appeal. However, as non-parties to the community partition litigation, appellants objected to the production of the Schedule K-1 forms issued to the other siblings in Item 1, as well as appellants' tax returns requested in Item 2, because these documents contain personal and confidential financial information.[5] In response, Ms. Centanni filed a motion to compel arguing that she needed the requested documents to defend against Mr. Centanni's tax reimbursement claim.

Bruce Miller, the special master appointed by consent of the parties, heard the motion to compel on September 14, 2020. Following the hearing, he issued an order on September 16, 2020, granting the motion to compel in part and denying it in part. Mr. Miller ordered Central Dispatch to produce certain schedules and statements filed with its tax returns from 2008 to 2016, including "Schedules L, M-1, and M-2 and all statements and supplemental information as shown on IRS

_____

distributed to them. The tax reimbursement claim involves funds Central Dispatch used to pay taxes owed by the parties. Central Dispatch is the only appellant that allegedly paid taxes on behalf of the community.

[4] La. C.C. art. 2339 provides that civil fruits of the separate property of a spouse are community property.

[5] According to the parties, a Schedule K-1 is a tax form prepared for each individual stakeholder in the entity to report earnings, losses and dividends. Schedule K-1 forms are issued by pass-through entities, such as Subchapter S corporations, that do not directly pay corporate taxes on their income.

Form 1120S and/or Forms 1065. . ..." He denied the requests with respect to the Schedule K-1 forms issued to any person other than Mr. Centanni and found the requests in Items 3 and 4 for journal entries were moot because they were previously produced. The special master testified at the evidentiary hearing held before the trial court on Ms. Centanni's objection, and he explained that he did not require Centanni, LLC or Centanni Limited Partnership to produce any documents based on representations from their attorney that they did not pay any state or federal taxes on behalf of Mr. Centanni. He also explained that he ordered Centanni Dispatch to provide him with unredacted copies of the schedules he ordered produced, and he redacted them to provide information pertinent to the pending claims. According to the transcript, these relevant claims included Mr. Centanni's tax reimbursement claim discussed above and a reimbursement claim raised by Ms. Centanni to recover the community share of loans that the siblings allegedly made to the appellant entities.[6]

After the special master issued his order, Ms. Centanni retained new counsel, and on September 28, 2020, she filed an objection to the portion of the special master's order denying her motion to compel.[7] In her objection, Ms. Centanni argued that she needed the accounting records and balance sheets for all of Central Dispatch's shareholders to defend the tax reimbursement claim. She claimed that by alleging the tax payments did not qualify as distributions to Mr. Centanni, Mr. Centanni placed the tax treatment of these payments by Central Dispatch at issue. She also expanded her grounds for seeking the requested documents by arguing that Centanni, LLC was a community asset and that she was

---

[6] Mr. Centanni and appellants contend that there are no actual loans existing between appellants and the siblings. They contend that in order to maintain Subchapter S corporation status with the IRS, distributions to the shareholders must be equal and adjustments made to equalize the distributions on the tax returns appear as loans to shareholders.

[7] Appellants did not object to the special master's judgment to produce the specified schedules from their tax returns.

entitled to tax returns and other corporate documents to allow her to establish its value. She acknowledged that at the time Centanni, LLC was formed in 1999, she executed an intervention agreeing that the entity was Mr. Centanni's separate property and acquired by separate funds.[8] However, Ms. Centanni alleged that she discovered from Schedule K-1 forms produced by Centanni, LLC that no cash contributions were made by the siblings in 1999. She contends Centanni, LLC did not receive any cash contributions until 2014, when a distribution was made to Mr. Centanni to invest in Centanni, LLC, and as such, the investment is community property.

Ms. Centanni further argued in an amended and supplemental objection filed on October 13, 2020, that Centanni, LLC is a one percent (1%) owner of Centanni Limited Partnership, and she is entitled to the "financial documents" and accounting records of this entity because any distributions are community property. Ms. Centanni finally alleged that Centanni Limited Partnership provided funds to Centanni, LLC to purchase immovable property and that a limited partnership cannot invest cash in another business. She claimed that any cash funds dispersed from a limited partnership are taxed as a distribution to the partner and, therefore, the "financial documents" of Centanni Limited Partnership are discoverable.

The trial court held an evidentiary hearing on Ms. Centanni's objections on October 16, 2020. In addition to hearing oral argument from the parties' counsel, the trial court heard testimony from the parties' accountants (Kenneth Pailet for Ms. Centanni, and Mike Kinsberry and Eric Fullmer for appellants), as well as from the special master, Bruce Miller. Following the evidentiary hearing, the trial court granted Ms. Centanni's objection and stated that "in the interest of due process," it was ordering appellants to produce all of the documents requested in the subpoenas duces tecum from 2008 to 2016, subject to a protective order. The

---

[8] The operating agreement indicated that each member contributed $100 as his or her initial capital contribution.

trial judge explained that though she understood appellants' position, she believed the protective order was sufficient to protect appellants' interests and found that good cause existed to produce the requested documents because "there is a party getting divorced that is a member of these companies or a shareholder in these companies." In addition to granting the motion to compel, the trial judge also allowed the parties to amend their sworn detailed descriptive lists.[9] On October 22, 2020, the trial court issued a written judgment containing its ruling on the objection. Appellants filed a timely motion for suspensive appeal on November 2, 2020, which the trial court granted on November 10, 2020.

## DISCUSSION

As explained above, appellants argue that the trial court abused its discretion by ordering non-parties to produce their tax returns, as well as the Schedule K-1 forms issued to persons other than Mr. Centanni, without requiring Ms. Centanni to establish good cause by showing the relevancy of the documents to the issues pending between the parties and her inability to obtain the information needed from other sources. Appellants contend that Ms. Centanni received all of the relevant documents she needs to prove her pending claims and defend against Mr. Centanni's tax reimbursement claim.

The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation; (2) to discover the true facts and compel disclosure of these facts wherever they may be found; (3) to assist litigants in preparing their cases for trial; (4) to narrow and clarify the basic issues between the parties; and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. *Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125, 129 (La. 1983). The discovery statutes are to be liberally and broadly construed to achieve their

---

[9] Mr. Centanni does not contest the trial court's decision to allow the parties to amend their lists in this appeal.

intended objectives. *Stolzle v. Safety & Systems Assur. Consultants, Inc.*, 02-1197 (La. 5/24/02), 819 So.2d 287, 289. A party generally may obtain discovery of any information, not privileged, which is relevant to the subject matter involved in the pending action. *Id;* La. C.C. P. art. 1422. The test of discoverability is not the admissibility of the particular information sought, but whether the information appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

There are limitations to these rules, however, when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense. La. C.C.P. art. 1426. When seeking to subpoena documents and information from a non-party, Louisiana courts require a showing of relevancy and good cause. *Stolzle*, 819 So.2d at 289. Furthermore, due to the confidential and personal nature of the information contained in income tax returns, the requesting party must demonstrate "good cause for their production and whether the information could be discovered in a less intrusive manner." *In Re Marshall Legacy Foundation*, 16-215 (La. 2/12/16), 186 So.3d 1171; *Bianchi v. Pattison Pontiac Co.*, 258 So.2d 388, 390 (La. App. 4th Cir. 1972); *Canty v. Barragan*, 19-1515 (La. App. 1 Cir. 12/19/19), 2019 WL 6998254.

In *Bianchi*, *supra*, the appellate court reasoned that courts should be cautious when permitting the production of income tax returns and should require parties to relate the need for production of the tax returns to the issues in dispute:

> However, because of the confidential and personal nature character of [an income tax returns] contents, the court should be very cautious in permitting its inspection and copying. Such action should be authorized only after the court is convinced both of its relevancy and necessity for the prosecution of the plaintiff's suit.
>
> * * *
>
> . . . [T]his court cannot overemphasize the fact that the party seeking the income tax return must clearly establish good cause for its production by showing the unavailability of the information from other sources and, further, by relating its need to the issues in dispute.

*Id.* at 390.

Furthermore, in their interpretation of the federal rules of discovery from which our rules of discovery originate, federal courts have also required a strong showing of relevancy before allowing the discovery of the financial affairs of a third person. *See Ouachita National Bank in Monroe v. Palowsky*, 554 So.2d 108, 112 (La. App. 2nd Cir. 1989), *citing In re Fontaine*, 402 F.Supp 1219 (E.D.N.Y. 1975). A trial court has broad discretion in ruling on discovery matters. *Stolzle*, 819 So.2d at 289. In determining whether the trial court erred in ordering discovery, courts must balance the information sought in light of the factual issues involved and the hardships that would be caused by the court's order. *Sercovich v. Sercovich*, 11-1780 (La. App. 4 Cir. 6/13/12), 96 So.3d 600, 603.

After reviewing the designated record, we find the trial court erred by finding relevancy and good cause existed to allow the production of all of appellants' tax returns and Schedule K-1 forms from 2008 to 2016 because of Mr. Centanni's interests as a stakeholder in the appellant entities. The applicable law clearly requires Ms. Centanni to establish the relevancy of the documents requested from each entity to the claims at issue between the parties. However, the testimony presented at the evidentiary hearing indicates that Ms. Centanni could not relate the need for the tax returns or the additional Schedule K-1 forms to the claims pending at the time of the evidentiary hearing.

At the evidentiary hearing on the objection, Mr. Centanni's counsel argued that Ms. Centanni possessed all the documents she needed to prove her shareholder loan claim. She further argued that Ms. Centanni did not need the tax returns or Schedule K-1 forms to defend against Mr. Centanni's tax reimbursement claim as this issue only required the special master's legal determination as to whether the tax payments made by Central were civil fruits of the company. Following opening oral arguments, the trial court specifically asked Ms. Centanni's counsel to

explain why Ms. Centanni needed the requested documents from appellants to determine whether or not the tax payments were civil fruits. Counsel indicated that Ms. Centanni's accountant, Kenneth Pailet, would explain why Ms. Centanni needed the requested documents. However, when the trial court asked Mr. Pailet why he needed the documents to determine whether the tax payments were civil fruits, Mr. Pailet agreed this was a legal issue. Instead of explaining why the subpoenaed documents were relevant to the existing claims, Mr. Pailet then turned to a discussion of the new allegations raised in Ms. Centanni's objection regarding the community nature of Centanni, LLC. Furthermore, on cross examination, Mr. Pailet conceded that when Ms. Centanni received the redacted Schedules L, M-1 and M-2, previously ordered produced by the special master, she may possibly have all of the information she needed to defend the tax reimbursement claim and prove her shareholder loan claim. Mr. Pailet testified that he had not yet received or reviewed these schedules at the time of the evidentiary hearing.

More importantly, the special master's testimony also supports our finding that Ms. Centanni failed to satisfy her burden of proof with respect to the existing claims. During his testimony, Mr. Miller explained that he was present at several of the meetings between the parties' experts to address the parties' claims and discovery issues. He testified that Ms. Centanni possessed all of the documents needed with respect to the tax reimbursement claim and shareholder loan claim. He explained that Ms. Centanni possessed all of the "source documents," including general ledgers and checks an accountant would use to prepare appellants' tax returns. Mr. Miller also explained that even though he believed these source documents provided the information Ms. Centanni required for the claims at issue, he ordered production of the Schedule L forms, which are balance sheets that "will reflect for example what the loans were . . . that belongs (sic) to the shareholders," and that the "general ledger and the balancing of the book would show how those

loans were treated . . . ." He further explained that the Schedules M-1 and M-2 forms provided information regarding adjustments used to reconcile the "books" of the entities with the tax returns. Mr. Miller indicated that he ordered production of these schedules to provide an extra level of comfort to Ms. Centanni that she possessed all of the relevant information for the pending claims.

Mr. Miller also explained that production of the tax returns was not necessary because the information on the tax return satisfied IRS criteria as opposed to corporate criteria relevant to determining the actual treatment of transactions questioned by Ms. Centanni.[10] He further clarified that with respect to the Schedules L, M-1 and M-2 he ordered produced, appellants provided him with unredacted schedules and he redacted these documents using his training as a board certified tax attorney for the last 25 years to provide the relevant information to Ms. Centanni. Based on the forgoing, we find that Ms. Centanni did not meet her burden to prove the relevancy of the tax returns and Schedule K-1 forms to the shareholder loan or tax reimbursement claims.

Undoubtedly, because Ms. Centanni was unable to provide specific explanations as to why she required additional documents beyond those previously ordered by the special master for the existing claims, the focus of the hearing shifted to Ms. Centanni's new claim raised in her objection that Centanni, LLC is community property and that she required the subpoenaed documents to value this asset. Mr. Miller indicated at the evidentiary hearing that he did not consider any claims regarding whether Centanni, LLC was a community asset in determining which documents appellants should produce, because these claims were not included on Ms. Centanni's sworn detailed descriptive list and the time to submit new claims had expired. Ms. Centanni argues on appeal that based on this new

---

[10] Tax regulations are not determinant as to whether an asset is community or separate property under Louisiana law. *See McKneely v. McKneely*, 98-2472 (La. App. 1 Cir. 6/14/00), 764 So.2d 1157, 1160.

claim, Mr. Miller changed his mind during the hearing and indicated that she

should receive full disclosure of not just the tax returns and Schedule K-1 forms,

but the "corporate documents" of all three appellants based on the following

suggestion:

> Now, let's say in connection with full disclosure, full documentation
> to you then perhaps maybe the better alternative is to let all documents
> go to you subject to a protective order that needs to be adhered to and
> then you can determine what you're going to use at trial and then I can
> make appropriate rulings as to admissibility, relevant and that sort of
> pattern. That might be another way to get what you're looking for but
> again maintain the confidentiality as envisioned by a protective order.

After reviewing the entirety of Mr. Miller's testimony, it is apparent he

raised this alternative as a means to expedite the discovery process and place the

matter back on track for trial in light of the trial court's indication that it would

allow the parties to reopen the sworn detailed descriptive lists to add new claims.

The transcript indicates that the trial court seized upon this suggestion and decided

to order the production of all of the documents requested in the subpoenas duces

tecum.

While we recognize that the alternative procedure suggested by Mr. Miller

would expedite the discovery process with respect to Ms. Centanni's new claim

that Centanni, LLC is a community asset, the applicable law requires a finding of

relevancy and good cause prior to ordering the production of the tax returns and

Schedule K-1 forms. Ms. Centanni alleged in her objection that the subpoenaed

documents were relevant to value this asset assuming it is community property. If

the special master determines that Centanni, LLC is community property, Ms.

Centanni may be entitled to one-half of the value of Mr. Centanni's interests in the

entity at the time of the trial and could discover documents relevant to determine

the value of the entity, including tax returns. *See D'Spain v. D'Spain*, 527 So.2d

309 (La. App. 5th Cir 1998); *Borello v. Borello*, 614 So.2d 91, 94 (La. 4th Cir.

1992); La. R.S. 9:2801(4)(a). However, the special master has not yet conducted

the trial of the traverses pursuant to La. R.S. 9:2801(A)(2) to determine the community assets and liabilities that are contested, and Ms. Centanni did not provide any specific explanations as to why the tax returns and Schedule K-1 forms would be relevant to the establishing the classification of Centanni, LLC as a community asset, as opposed to determining its value following classification as a community asset.

Based on our review of the record, it appears the trial court did not order the blanket production of the records because of the pending claims. Rather, it ordered the production in anticipation of claims that it expected Ms. Centanni to add to her sworn detailed descriptive list. We believe the trial court resorted to allowing the production of all of the documents based on its decision to allow the parties to amend their sworn detailed descriptive lists and in an effort to expedite the resolution of the community property partition. Even considering the protections afforded by the protective order, the applicable law, does not permit the solution presented by the special master when a non-party is involved. We find no authority that permits the production of tax returns and Schedule K-1 for non-parties in a community property partition, even in a scenario involving a closely held business entity, based solely on one spouse's ownership interests in the entity. The party seeking production of the documents must relate the relevancy of the requested documents to the claims at issue and establish that the information cannot be obtained by less intrusive means. The trial court erred by not requiring Ms. Centanni to provide these specific explanations prior to ordering appellants to produce the requested documents.

In light of the trial court's decision to allow the party to amend their sworn detailed descriptive lists, we recognize that additional grounds may exist to allow for the production of appellants' tax returns and the Schedule K-1 forms issued by these entities to individuals or entities other than Mr. Centanni. By reversing the

trial court's judgment, we do not intend to preclude Ms. Centanni from revisiting any new or additional grounds for seeking production of the tax returns and Schedule K-1 forms. We simply find that she failed to satisfy her burden of proof to warrant the production ordered by the trial court. Accordingly, we reverse the trial court's October 22, 2020 judgment ordering the production of appellants' tax returns and Schedule K-1 forms from 2008 to 2016.

**<u>REVERSED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 19, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-30

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
JENNIFER C. CARTER (APPELLEE)          BERNADETTE R. LEE (APPELLEE)          SHEILA H. WILLIS (APPELLEE)
BRUCE A. MILLER (OTHER)                TIMOTHY THRIFFILEY (APPELLANT)

### MAILED
EDITH H. MORRIS (APPELLEE)             DIXON C. BROWN (APPELLEE)             GEORGE I. PIVACH, II (APPELLANT)
SUZANNE ECUYER BAYLE (APPELLEE)        ATTORNEY AT LAW                      ATTORNEY AT LAW
ATTORNEYS AT LAW                       1615 POYDRAS STREET                  8311 HIGHWAY 23
1515 POYDRAS STREET                    SUITE 910                           SUITE 104
SUITE 1420                             METAIRIE, LA 70112                  BELLE CHASSE, LA 70037
NEW ORLEANS, LA 70112